[Cite as *J.W. v J.P.*, 2023-Ohio-3886.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| J.W., | : | |
| Petitioner-Appellee, | : | |
| | | No. 112625 |
| v. | : | |
| J.P., | : | |
| Respondent-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 26, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-976270

*Appearances:*

Weltman, Weinberg & Reis Co., L.P.A. and Amy Clum Holbrook, *for appellee.*

Dworken & Bernstein Co., L.P.A. and Anna M. Parise, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} This cause came to be heard on the accelerated calendar pursuant to App.R. 11.1 and Loc.App.R. 11.1. Respondent-appellant, J.P., appeals the trial court's

judgment granting a civil stalking protection order ("CSPO") to petitioner, J. W. [1] For the reasons set forth below, we affirm.

**Procedural and Factual History**

{¶ 2} On March 8, 2023, J.W. filed a CSPO against J.P. On the same date, the trial court granted J.W. an ex parte temporary protection order and set the matter for a full hearing on March 22, 2023. The hearing was held as scheduled. J.W. called one witness, B.P., who is J.P.'s wife. The circumstances of this case begin with the fact that J.P. and B.P. are married and are the parents of five children. The events that follow occurred after J.P. learned that J.W. and B.P. were having an affair. B.P. gave accounts of incidents with J.P. while she was with J.W. The first incident occurred on February 2, 2023. J.P. came to Buffalo Wild Wings ("BW3") because he observed J.W.'s and B.P.'s cars parked in the parking lot. He was verbally "disgusting" towards J.W. During that time, J.W.'s keys were removed from her jacket pocket. J.W. alleged that J.P. took her keys. J.W. alleged this belief was supported when one of J.P. and B.P.'s children returned the keys the following day.

{¶ 3} On February 9, 2023, while J.W and B.P. were parked in J.W.'s neighbor's driveway, J.P. blocked the car in with his vehicle. When B.P. told J.P. to leave, he did. When questioned if J.P. made any verbal threats, B.P. responded no. B.P. added that J.W. called her and was very upset because she alleged J.P. followed and chased her in his car.

---

[1] In accordance with this court's policy and with 18 U.S.C. 2265(d)(3), initials are used herein to protect the privacy of the protected party.

{¶ 4} Later, J.W. sent B.P. a phone number and asked her if she recognized it. B.P. verified that the telephone number that called J.W.'s place of work belonged to her sister. The caller tried to obtain J.W.'s work schedule. Finally, while at their home on February 28, 2023, B.P. taped J.P. threatening to take J.W. down and go after her job. As a result of that conversation with J.P., B.P. advised J.W. to get a protection order.

{¶ 5} J.W. also testified. She confirmed much of B.P.'s testimony establishing that J.P. showed up as follows: on January 6, 2023, he followed her from Dave's Supermarket parking lot; on January 13, 2023, he allegedly showed up at The Tavern on Mayfield; on February 2, 2023, he confronted her at BW3 and stated, "I will [f'ing] take you down, you home wrecking [c**t]"; on February 9, 2023, the phone call from B.P.'s sister's number was made; on February 28, 2023, J.P. chased J.W. down the street screaming and beeping his horn. When asked by the trial court whether J.P. caused mental distress and fear for her safety, J.W. responded, "A hundred percent. We've had to put cameras on my house. We've had to put cameras at my work, in and out." Tr. 36.

{¶ 6} After J.W. presented her evidence, J.P. moved to dismiss the petition alleging J.W. failed to demonstrate that a reasonable person would believe that her health, welfare, or safety were at risk based on J.P.'s conduct and that J.P. presented a continuing danger to J.W. The trial court denied the motion to dismiss. Thereafter, J.P. testified. He admitted to following J.W. from Dave's parking lot to confirm who was with his wife and going to The Tavern of Mayfield and BW3 to

confront B.P. J.P. alleged that he was trying to save his marriage from the affair B.P. was having with J.W. He alleged that B.P. and J.W. spent weekends together and J.W. was also trying to get close with their children. When questioned by the court how he knew his wife was at The Tavern of Mayfield, J.P. responded that he put a tracker on B.P.'s car. On March 23, 2023, the trial court journalized an order of protection noting that the court found by a preponderance of the evidence that:

> (1) Respondent has knowingly engaged in a pattern of conduct that caused petitioner to believe that respondent will cause physical harm or cause or has caused mental distress;

{¶ 7} J.P. now appeals and assigns the following errors for our review:

### Assignment of Error No. 1

The trial court erred when it failed to set forth a specific pattern of conduct in the issuance of the civil stalking protection order.

### Assignment of Error No. 2

The trial court erred when it improperly issued the order without evidence to support a finding of mental distress or fear of physical harm.

## Law and Analysis

{¶ 8} For ease of discussion, we will address the assignments of error jointly. Preliminarily, pursuant to R.C. 2903.214 a victim of menacing by stalking may secure a civil stalking protection order. To secure such an order, the petitioner must demonstrate by a preponderance of the evidence that the respondent's behavior violated the menacing by stalking statute. *E.J.V. v. S.R.*, 8th Dist. Cuyahoga No. 108615, 2020-Ohio-1612, ¶ 12.

{¶ 9} Appellate courts review a trial court's grant of a civil protection order for an abuse of discretion. *N.P. v. T.N.*, 8th Dist. Cuyahoga No. 106314, 2018-Ohio-2647, ¶ 20, citing *Williams v. Flannery*, 8th Dist. Cuyahoga No. 101880, 2015-Ohio-2040, ¶ 6. An abuse of discretion is more than an error of law or judgment; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *State v. Hill*, Slip Opinion No. 2022-Ohio-4544, ¶ 9.

{¶ 10} Where there is "'some competent, credible evidence to support each element of menacing by stalking'" the trial has properly granted a CSPO. *M.J.W. v. T.S.*, 8th Dist. Cuyahoga No. 108014, 2019-Ohio-3573, ¶ 26, quoting *Strausser v. White*, 8th Dist. Cuyahoga No. 92091, 2009-Ohio-3597, ¶ 33.

{¶ 11} J.P. asserts that the trial court did not set forth a pattern of conduct and that there is no evidence to support a finding of mental distress or fear of physical harm. As such, J.P. challenges the sufficiency of the evidence.

{¶ 12} Notably, civil and criminal cases share the same appellate review on matters of sufficiency of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. An appellate court reviews the evidence presented in the light most favorable to the appellee to determine whether the evidence presented was sufficient for all elements of the claim or offense. *Vega v. Tomas*, 8th Dist. Cuyahoga No. 104647, 2017-Ohio-298, ¶ 9.

{¶ 13} Before moving forward, it is necessary to state the definition of menacing by stalking, which is in relevant part, "[n]o person by engaging in a pattern

of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person." R.C. 2903.211(A)(1).

{¶ 14} A review of the record reflects, J.P. went to two restaurants where J.W. and B.P. were dining. In both of those instances, J.P. berated J.W. Additionally, J.P. followed J.W. and B.P. on two occasions, even blocking their vehicle in a driveway during one of the incidents. In a conversation with B.P. that was recorded, J.P. threatened to take J.W. down and go after her job. Finally, a call was made to J.W.'s place of employment regarding J.W.'s work hours.

{¶ 15} "Two or more actions or incidents closely related in time" constitute a pattern of conduct. R.C. 2903.211(D)(1). The closeness in time determination is made by the trier of fact on a case-by-case basis. *W.P.C. v. S.R.*, 8th Dist. Cuyahoga No. 108613, 2020-Ohio-3178, ¶ 13. J.P.'s conduct occurred from January 6 to February 28, 2023. Two incidents occurred within one week of the other.

{¶ 16} Moreover, when the trial court asked J.W. whether J.P. caused mental distress and fear for her safety, J.W. responded, "A hundred percent. We've had to put cameras on my house. We've had to put cameras at my work, in and out." Tr. 36.

{¶ 17} "Mental distress" is defined as including "any mental illness or condition that involves some temporary substantial incapacity" or "any mental illness or condition that would normally require * * * mental health services," even if the person did not request such services. R.C. 2903.211(D)(2).

{¶ 18} The trier of fact may rely on its own knowledge and experience in determining whether the respondent's conduct caused mental distress; expert testimony is not necessary. *R.R. v. J.H.*, 8th Dist. Cuyahoga No. 109465, 2021-Ohio-706, ¶ 29, citing *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18 (4th Dist.). Importantly, "'the testimony of the victim herself as to her fear is sufficient to establish mental distress.'" *Id.*, citing *Wunsch* quoting *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48.

{¶ 19} Interestingly, J.P. testified that his actions were not toward J.W., but B.P. Given his claimed intention, J.P. argues that he did not act knowingly toward J.W. However, this argument must fail.

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

R.C. 2901.22(B).

{¶ 20} Here, J.P. admitted to the conduct. The majority of the confrontations with B.P. were in the presence of J.W. Both B.P. and J.W. agree that J.P. did not overtly threaten J.W. verbally. Nevertheless, undeniably his uninvited presence and verbal abuse caused mental distress. The distress was evidenced both by J.W.'s testimony and reaction. When asked by the trial court whether J.P.'s conduct caused her mental distress, J.W. responded, "one hundred percent." She further responded that cameras were installed at both her home and employment. Additionally, B.P. testified that J.W. called her "freaking out" when J.P. chased her

down the street. Undoubtedly, J.P. acted knowingly when his conduct was directed at both B.P. and J.W. It does not matter whether J.P. intended to cause mental distress, but only whether "he knew his actions would probably result in such fear and mental distress." *Cleveland v. Scott*, 8th Dist. Cuyahoga No. 108305, 2019-Ohio-5244, ¶ 20, quoting *Vega* at ¶ 15, citing R.C. 2901.22(B).

{¶ 21} Upon construing the evidence in a light most favorable to J.W., as we are required to do in a sufficiency analysis, we conclude that the evidence was sufficient to establish that J.P. committed acts against J.W. that constituted menacing by stalking under R.C. 2903.211. Consequently, the trial court did not abuse its discretion in granting the CSPO.

{¶ 22} Finally, J.P. claims that the trial court committed plain error when it "failed to set forth the specific events and facts that were adduced at trial in the issuance" of its CSPO. However, J.P. failed to support this claim as required pursuant to App.R. 16(A)(7) with reasons in support of the contention, with citation to authority and/or the record. Since the necessary support was not presented on the plain error allegation, we will not address this claim.

{¶ 23} Accordingly, we overrule the first and second assignments of error.

{¶ 24} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN T. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR